THE STATE OF NEW JERSEY, EX REL. UNO ORRE, JOSEPH A. MARCHESE, MANFIELD G. AMLICKE, BENJAMIN SPRECHMAN AND JOHN A. HORKA, RELATORS, v. GARRET ROOSMA, JR., CHRISTIAN VAN HEEST, EMIL BERNHARDT, JOHN E. NEUBAUER AND EDWARD C. VANNAMAN, RESPONDENTS.

Decided March 9, 1936.

For the relators, *Martin Klughaupt* (*Leo Bruck,* of counsel).

For the respondents, *Joseph J. Weinberger.*

WOLBER, C. C. J.  These actions are before me pursuant to a reference made by the Supreme Court to find the facts in this issue.  *State* v. *Goodfellow,* 111 *N. J. L.* 604 (*Comp. Stat., p.* 1712, § 28-A).  The proceeding is one on information in the nature of *quo warranto,* under the provisions of section 4 of the statute (*Comp. Stat., p.* 4212), to determine the title between rival claimants to membership in the offices of the board of adjustment of the city of Passaic.

The relators, five in number, assert that each of them individually is a duly appointed member of the board of adjustment of the city of Passaic, and that the respondents, also five in number, usurp, intrude into and are unlawfully holding and executing the powers and duties of their offices.  To this information the respondents have filed a plea denying the right of the relators and asserting title to said offices in themselves.  Upon this plea, the relators joined issue, and the matter was referred to me for trial.  At the trial, the parties waived a jury and have stipulated the facts.

From this stipulation, it appears that the city of Passaic is presently governed under the provisions of the Walsh act (or Commission Government act, *Pamph. L.* 1911, *p.* 462, *ch.* 221; *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 2457, § **136-1), and has been so governed since the year 1911, when it was adopted.  On June 20th, 1922, the then board of commissioners adopted an ordinance dividing the city into numerous zones, and providing for the use and extent of use of buildings, structures and land in the various zones regulated and creating the board of zoning appeals to consist of five members, pursuant to the then existing statute.  *Pamph. L.* 1921, *ch.* 82.  The power to appoint the members was vested in the mayor, in accordance with the enabling statute.  On December 9th, 1924, pursuant to the provisions of *Pamph. L.* 1924, *ch.* 146; *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 2405,

§ *136-4200F(1), the then board of commissioners adopted a supplement to that ordinance which tended to conform to the enabling statute, whereby a board of adjustment was created, to consist of five members, and the name of the old board was changed as stated, and the ordinance vested in the mayor the power to appoint the members thereto for a term of three years. Under *Pamph. L.* 1928, *ch.* 274; *Cum. Supp. Comp. Stat.* 1925-1930, *p.* 1245, § *136-4200j(3), said board has continued to function. This ordinance has not been supplemented, amended or repealed by any subsequent ordinance adopted by any succeeding board of commissioners.

On May 14th, 1935, an election for commissioners was held in the city of Passaic. At the organization meeting of the newly elected board held on May 21st, 1935, Commissioner Benjamin F. Turner was designated as mayor, and director of parks and public property; Commissioner Zabriskie A. Van Houten was designated the director of public affairs. On June 11th, 1935, the board of commissioners passed a resolution which the board subsequently amended by resolution of July 16th, 1935. Among the many provisions of this resolution as amended, it is found that the executive, administrative, judicial and legislative powers, duties and authority relating to the board of adjustment were assigned and distributed into the department of public affairs, over which department Commissioner Zabriskie A. Van Houten was the director.

On July 16th, 1935, Mayor Turner, claiming to act under the ordinance of 1922 and its supplement of 1924, appointed four of the relators as members of the board of adjustment, and one Martin Klughaupt as the fifth member. Subsequently, the relator, John A. Horka, was appointed by the mayor because of the resignation of Mr. Martin Klughaupt.

On July 30th, 1935, at a meeting of the board of commissioners, Mr. Zabriskie A. Van Houten, director of public affairs, nominated the five respondents as members to the board of adjustment, and his nominations were approved by a majority of the board of commissioners. Since that time, and at the time of the filing of the information herein, the

respondents have assumed to act as the board of adjustment of the city of Passaic.

It is conceded by the relators Joseph A. Marchese and Manfield G. Amlicke, that they did not take the oath of office within the time required by law, and hence have no claim to the several offices in question. As respects them, therefore, I find that they have no claim or right to membership in the board of adjustment of the city of Passaic.

The respondents contend that the provisions of the ordinance of December 9th, 1924, vesting the power of appointment in the mayor, are inconsistent with the provisions of the Walsh act (*Pamph. L.* 1911, *ch.* 221), as amended and supplemented, and argue that in view of such operation, the power of appointment resides in the director of public affairs, as the board of commissioners assigned it by the resolution, as amended on July 16th, 1935. In my opinion, the solution of this contention will be determinative of the various questions raised and argued by the parties to this proceeding.

The Walsh act as originally enacted has on many occasions been considered by the courts and its object has been clearly pointed out in such cases as *Salter* v. *Burk,* 83 *N. J. L.* 152; 83 *Atl. Rep.* 937; *Buohl* v. *Beverly,* 90 *N. J. L.* 44; 98 *Atl. Rep.* 270, and *Woolley* v. *Flock,* 92 *N. J. L.* 65. Since its original enactment, it has been amended by *Pamph. L.* 1912, *ch.* 48; *Pamph. L.* 1912, *ch.* 366; *Pamph. L.* 1914, *ch.* 144; *Pamph. L.* 1915, *ch.* 228; *Pamph. L.* 1916, *ch.* 193; *Pamph. L.* 1922, *ch.* 120; *Pamph. L.* 1927, *ch.* 330; *Pamph. L.* 1929, *ch.* 265, and *Pamph. L.* 1930, *ch.* 221; some as a result of decisions of the courts (*Oliver* v. *Daly,* 103 *Id.* 52); others to provide for an extension of powers, changes in procedure; and still others consonant with needs of such municipalities as a result of changed legislative policy.

The development of the Walsh act since its original passage by the various amendments and supplements clearly evinces a legislative purpose of conferring upon the board of commissioners the most complete power that any municipal body should possess in conformity with its original plan of centralizing power and centralizing responsibility in the event of

misuse of that power. Any contention that lends itself to the development and enlargement of this purpose is more in harmony with its spirit, and should be adopted, rather than a construction or interpretation that tends to circumscribe or limit its intended omnibus operation.

In the light of such background, an attempt will be made to examine the provisions of the diverse appointing powers that exist in the case at bar, so as to determine where the legislature intended the power should in fact reside.

The board of commissioners is a non-continuous body. *O'Connell* v. *Bayonne,* 116 *N. J. L.* 61. With regard to appointments where the term is not fixed by statute, the board of commissioners is without power to bind succeeding boards. In this connection, it seems apparent that the terms of the ordinance of December 9th, 1924, vesting the power of appointment in the mayor, operates to prevent the board of commissioners at its organization meeting from using its power to "* * * determine the powers and duties to be performed by each department and shall assign such powers and duties to such department as they in their judgment deem appropriate, and they shall prescribe the powers and duties of all officers and employes and they may assign particular officers and employes to one or more departments and may require any officer or employe to perform duties in two or more departments; * * *." *Pamph. L.* 1930, *ch.* 221.

The ordinance prescribing a different method of appointment could not therefore be a fixed rule that would prevent the board of commissioners from taking such action. During the term of the board of commissioners that sponsored the ordinance, it had force and was its guidance. In the face of the present board, the ordinance could not be one which would compel obedience as a rule of law. Otherwise, the present board of commissioners was denied the important power of assigning the various powers, duties and departments as in its judgment was deemed appropriate. This the legislature expressly conferred upon the board of commissioners. I believe that this interpretation of the effect of the ordinance of December 9th, 1924, is consistent with the broad grant of

powers to the board of commissioners under the Walsh act. The contention of the relators that the ordinance is operative, militates against such a construction, and leads to a result which restricts the board of commissioners to a canalized course which flows through narrow banks.

The rule of interpretation applicable to this case is not strictly that of a repeal of the Zoning law or any part of it, by the terms of the Walsh act, by implication or otherwise, but rests rather upon a consideration of the framework of the several statutes so as to reconcile them to the intended operation of their respective scope. It is true that the statute enables the resolution to suspend *pro hac vice* the terms of the ordinance during its continuance. This result is brought about by the force of the Walsh act. A pertinent canon is stated in *Roche* v. *Mayor, &c., of Jersey City,* 40 *N. J. L.* 257, as follows:

"Every statute must be considered according to what appears to have been the intention of the legislature, and even though two statutes, relating to the same subject, be not in terms repugnant or inconsistent, if the later statute is clearly intended to prescribe the only rule which should govern the case provided for, it will be construed as repealing the original act.

"The rule does not rest strictly upon the ground of repeal by implication, but upon the principle that when the legislature makes a revision of a particular statute, and frames a new statute upon the subject-matter, and from the framework of the act it is apparent that the legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory. * * *"

The contention, therefore, that the ordinance may only be repealed, suspended or modified by action of like dignity (*American Malleables Co.* v. *Bloomfield,* 82 *N. J. L.* 79; 81 *Atl. Rep.* 500) is inapplicable for the reason that the result of

its suspension is brought about by the operation of a statute which indeed is of greater solemnity than the requisites of the rule cited.

This interpretation leads me to the view that the power of appointment conferred by the ordinance of December 9th, 1924, upon the mayor was suspended by the operation of the various amendments and supplements of the Walsh act, and the resolution of July 16th, 1935, and that the appointing power was intended to be vested in such director as the board of commissioners at the organization meeting deemed appropriate. This leads me to the view, and I further find, that the relators have no title to the offices as members of the board of adjustment of the city of Passaic, but that the title is vested in the respondents.