THEODORE MENDLES v. ABRAHAM J. DANISH.

Submitted December 6, 1906—Decided February 25, 1907.

1. Where the authorization in writing by the owner to the real estate broker for the sale of lands fixes the compensation to be received by him for his services at the amount he might realize at such sale over and above a certain sum therein named by the owner as his limit, such a contract is within section 10 of the statute of frauds (*Gen. Stat.*, 1604), even though the rate of commission on the dollar be not stated therein, as required by the literal words of the section.

2. In construing a statute, where ambiguity exists or literal interpretation may lead to absurd results, resort may be had to the principle that the spirit of the law controls the letter.

On case certified.

Before Justices HENDRICKSON, SWAYZE and TRENCHARD.

For the plaintiff, *McEwan & McEwan*.

For the defendant, *Clarence Kelsey*.

The opinion of the court was delivered by

HENDRICKSON, J. This is a case certified from the Hudson County Circuit Court to this court for its advisory opinion, under section 215 of the Practice act. *Pamph. L.* 1903, *p.* 537. The facts of the case are presented in the certificate, which reads as follows:

"This is a suit by a real estate broker to recover commission or compensation claimed to be due him for selling real estate for or on account of the owner. The authority of the broker was in writing, as follows (*Exhibit P*1) :

" 'No. 293 Hanry Str., New York,
" 'New York, Oct. 16, 1905.
" 'I, the undersigned, owner of the house known as No. 21 Storm Avenue, Jersey City, N. J., do hereby authorize Theodore Mendles, Real Estate and Broker, to sell same property mentioned above on the following conditions precedent:

" '*First*. Buyer must buy subject to two mortgages amounting ($3,400) three thousand and four hundred dollars.

" '*Second*. The balance must be paid in cash.

" '*Third*. That I must get ($5,500) five thousand and five hundred net.

" '*Fourth*. That if any one will make a sale before said Theodore Mendles, said Theodore Mendles has no claim against the owner whatever. Agreeing on these conditions I set my hand and signature.

" 'A'BM. DANISH, JR.

(Witness) " 'L. MOSTWILL.' "

This document was construed by the parties before suit brought, and by the court and parties at the trial, as meaning that if the broker obtained a purchaser for the property on the terms stated therein for any amount in excess of the $5,500 net to the owner, said broker should be entitled to retain such excess as his commission or compensation. It was conceded or conclusively shown at the trial that if the plaintiff was entitled to recover, the amount of the verdict should be $300, being the excess of the net amount $5,800 which a purchaser procured by plaintiff was willing to pay, over the $5,500 mentioned in the authority as net price to owner. The only question of fact necessary for the jury to pass upon was that submitted specially to them, as follows:

"Did the plaintiff, Mendles, on October 27th, 1905, at his office, as claimed, notify defendant, Danish, that the intending purchaser procured by plaintiff was ready and willing to contract for the purchase of the defendant's property without paying off the second mortgage thereon?"

This question the jury answered, "yes."

Upon this finding of fact the plaintiff is entitled to judgment for $300, if the following questions of law, which are hereby certified to the Supreme Court as questions of doubt and difficulty, for its advisory opinion, are resolved in favor of the plaintiff:

"1. Is the excess of $300 claimed by plaintiff a 'commission for the sale of real estate' within the meaning of the tenth section of the statute of frauds?

"2. If so, is the written memorandum above set forth a sufficient compliance with said section?"

The answer to the questions thus certified to us involves another inquiry, and that is, Did the legislature intend by section 10 of the statute of frauds to embrace every contract for compensation to the real estate broker for his services or only those based upon a commission in its technical sense? It is contended for the plaintiff that the latter is the true intent of the statute, because section 10 requires not only that the authority for the selling, &c., must be in writing, signed, &c., but that the rate of commission on the dollar must be stated in such authority. It must be observed, that while the compensation paid to brokers of this class has been usually in the form of commissions, the practice has not been universal. Employment by special agreements in such cases for a sum certain, as distinct from commissions, is recognized by the books. In *Hinds* v. *Henry,* 7 *Vroom* 328, the contract fixed the compensation by the amount to be realized at a sale, over and above a fixed sum, and it is said in the opinion "if the employment be by special agreement, the rights and liabilities of the parties will be determined by the terms of the agreement exclusively." The compensation for the services of such a broker are spoken of in the case just mentioned and in general treatises on the subject, also as commission or compensation; and we think, therefore, that the use of the word "commission," in this statute, presents a case of ambiguity, in resolving which, we are at liberty to call to our aid the rules of construction usually applied in such cases. Resort may be had in such case to the reason and spirit of the law. It cannot be doubted but that the purpose of this act was to prevent frauds and perjuries, and if the contract in question is not within this statute, it leaves open all such special contracts to be established by parol proof, thus inviting the evil which it was the intent of the statute to prevent. In such a construction, the rule is that we should so construe the statute as to suppress the mischief and advance the remedy. 1 *Bl. Com.* 87. Applying these rules of construction, we think the word "commission," as used in the statute, was intended to include not

merely commissions in the technical sense, but every form of compensation. We think this view finds support also in the cases. In *Stout* v. *Humphrey*, 40 *Vroom* 436, which was in the Court of Errors and Appeals, the effort was to avoid the effect of this statute by claiming for services in the transaction as an attorney, not being in strictness those usually performed by the broker; but that court held that the section applied to any person who acts as broker or agent in the transaction out of which the claim for compensation arises; and further, that in the absence of a written contract for such sale, there is an absence of right to compensation for services.

It is further urged that this meaning of the statute must be narrowed because of the clause requiring that "the rate of commission on the dollar shall have been stated in such authority." It is true that this use of the word "commission" in the last clause of the section would seem to be inconsistent with the meaning we have attached to the preceding words, but we must take the whole section together in placing a construction upon it, and we must so construe one part of the statute with another, that the whole may, if possible, stand. 1 *Bl. Com.* 87. Where the compensation is to be a commission, then of course the percentage on the dollar must be stated in the authority. If a sum certain is reserved in the contract for compensation, we think such contract would be clearly within the spirit of the clause of section 10 just quoted. In many, if not all cases, from the sum certain thus expressed, the rate of commission could be ascertained; if not at the date of the contract, it could at the time of the sale. Where ambiguity exists or literal interpretation may lead to absurd results, resort may be had to the principle that the spirit of the law controls the letter. 26 *Am. & Eng. Encycl. L.* 601.

We therefore reach this result: That the first question is answered, "yes." In answering the second question, we must take the contract as construed by the court and parties below at the trial. Taking that construction as our guide, our answer to the second question is, "yes." Our opinion thus expressed will be certified to the Circuit Court, that it may proceed to judgment accordingly.